UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IMAD YANNI, *et al.*,

    Plaintiffs,

    v.

CITY OF SEATTLE, *et al.*,

    Defendants.

Case No. C04-0896L

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by the City of Seattle and police officer Robert Mahoney (Dkt. #49) and on a motion for summary judgment filed by police officer Scott Elliott. (Dkt. #46). The Court considers both motions together.

For the reasons set forth below, the Court grants Officer Elliott's motion, and grants in part and denies in part Officer Mahoney and the City's motion.

## II. DISCUSSION

**A.   Background Facts.**

On June 12, 2002, the plaintiffs Imad and Maryann Yanni were walking to a friend's apartment in Seattle's Capitol Hill neighborhood when they heard several items, including a

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 1

bicycle, strike the sidewalk behind them. The items had been thrown from an upper floor of an apartment building next to their friends' building. After the Yannis visited their friend, they saw Officer Elliott taking into custody the man suspected of throwing the items from the window. Ms. Yanni commented that the items had nearly struck them. The suspect responded that they had not been hit. Officer Elliott states that he asked Ms. Yanni to wait so he could obtain a statement from her; the Yannis deny that the request was made. The Yannis then continued to walk towards their own apartment two blocks away. Meanwhile, Officer Mahoney, who was assigned as back-up regarding the incident, was taking a statement from another witness.

Officer Elliott asked Officer Mahoney to bring Ms. Yanni back to him. The parties disagree regarding whether Officer Elliott simply directed Officer Mahoney to bring her back, or whether he asked that she be brought back so he could obtain a statement. The Yannis did not hear the officers' exchange.

Officer Mahoney then ran down the block towards the Yannis, whom he believed were arguing with each other, and put his hand on Ms. Yanni's elbow. When Ms. Yanni asked, "Why are you grabbing me?" Officer Mahoney responded, "That officer wanted to talk to you." Declaration of Timothy Ford ("Ford Decl."), Ex. 3 at 131. Officer Mahoney said that Ms. Yanni began to willingly accompany him back to Officer Elliott. However, after Mr. Yanni demanded to know what was going on, Ms. Yanni stopped walking with Officer Mahoney. Officer Mahoney took her by the elbow and informed the Yannis, "She can't walk away from me." Ford Decl., Ex. 7. The Yannis were both aware that Mahoney was a police officer.

Mr. Yanni twice demanded that Officer Mahoney "let her go." Declaration of Michael Teeter ("Teeter Decl."), Ex. A.[1] Officer Mahoney directed Mr. Yanni to "stay back" and placed

---

[1] Plaintiffs have moved to strike Exhibit A to Sergeant Teeter's declaration, which is his typed notes from his interviews with the Yannis. Plaintiffs' Opposition at p. 8 n.3. The Court denies the request to strike because the notes are admissible under two exceptions to the hearsay rule: (1) Records of regularly conducted activity, Fed. R. Ev. 803(6) and (2) Admission by a party-opponent, Fed. R. Ev. 801(d)(2).

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 2

his hand, with the fingers outstretched, on Mr. Yanni's chest. Mr. Yanni Dep. at 60-63.[2] Mr. Yanni said, "But that's my wife" and loudly demanded that Officer Mahoney take his hands off him. Id. at 63-64, 69. Officer Mahoney then "grabbed him by the underneath of the neck . . . and started pushing him back and pushing him back" until he "was up against a parked vehicle on the street." Ford Decl., Ex. 3 at 136-39. Ms. Yanni states that Officer Mahoney "lost control;" he grabbed Mr. Yanni by the neck and punched him approximately five times in the face. Id.; see also Teeter Decl., Ex. A (Ms. Yanni stating in telephone interview with police investigator that Officer Mahoney punched her husband twice). Mr. Yanni states that he had his hands at his sides while Officer Mahoney attacked him; Ms. Yanni did not see her husband make an aggressive move towards Officer Mahoney. Mr. Yanni Dep. at 68-69.

Officer Mahoney believed that Mr. Yanni was the aggressor. Officer Mahoney states that Mr. Yanni approached him and Ms. Yanni "very quickly and aggressively." Declaration of Rob Mahoney ("Mahoney Decl."), Ex. A (Certification for Determination of Probable Cause). Although Officer Mahoney instructed Mr. Yanni to "calm down" and "back away," Mr. Yanni became more aggressive, yelled at Officer Mahoney, puffed up his chest "closing the gap between [him and the officer] completely," and lunged at him. Id. During the course of the ensuing altercation, Officer Mahoney punched Mr. Yanni once or twice to protect himself. Mahoney Decl. at ¶ 8. He also called for backup assistance. Witness Jeremy Vasquez stated that it appeared to him that Mr. Yanni "turned and pushed the officer and then attacked the cop. The other officer noticed the struggle and ran down to assist." Mahoney Decl., Ex. B. Kevin Rice stated,

> The second officer casually walked towards the blonde girl and the male that was with her. I then heard [Mr. Yanni] start raising his voice. I then saw the guy lunge at the officer. They were then scuffling back and forth. The guy seemed to be flipping out. I then turned to look for the first officer because it seemed like the second officer needed help.

---

[2] For purposes of clarity, the Court cites directly to the witnesses' deposition transcripts rather than to exhibits attached to declarations.

Id. Officer Elliott heard Officer Mahoney's radio call of assistance and heard yelling in the background. He ran down the street to the group, where he observed "a lot of pushing on both directions. Officer Mahoney would push. Mr. Yanni would push. And then there would be a lot of pulling and turning and spinning around." Elliott Dep. at 45. Officer Elliott tackled Mr. Yanni to the ground,[3] and, while both officers knelt on his back, Officer Elliott handcuffed him. Officer Mahoney explained to Officer Elliott that Mr. Yanni had assaulted him. By that time a number of officers had responded to Officer Mahoney's request for backup, and a Sergeant had been called. The officers arrested Mr. Yanni for investigation of assault. Mr. Yanni was taken to jail where he was detained overnight.

The next morning, Ms. Yanni left a voice-mail complaint with the Seattle Police Department. An intake officer with the Office of Professional Accountability, Investigation Section ("IIS"), Sergeant Michael Teeter, listened to the message, then interviewed Ms. Yanni by telephone. Officer Teeter also interviewed Mr. Yanni in the King County Jail and photographed his injuries; he observed no visible injury to his ribs, neck or nose. Teeter Decl. at ¶ 6. He then submitted the intake on the case to another officer pursuant to department procedures. The IIS investigation ended with a finding of "exonerated" for both officers, which means that they "did in fact do what is alleged" and "their actions were within department policy." Evenson Dep. at 11-12. The Yannis were informed of the finding by letter dated January 8, 2003 signed by Captain Mark Evenson, Investigations Section Commander, Office of Professional Accountability. Ford Decl., Ex. 13.

Mr. Yanni was tried in March 2003 on the felony assault charge and acquitted by a jury in King County Superior Court.

---

[3] Mr. Yanni alleges that he was already on the ground when Officer Elliott arrived, and Officer Elliott knelt on his back. Mr. Yanni Dep. at 74-75; see also Ms. Yanni Dep. at 45 (explaining that Officer Elliott jumped on her husband's back).

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 4

**B.     Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact . . . ." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004).  All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**C.     Ms. Yanni's Claim for Unlawful Detention.**

**1.     Reasonable Suspicion for Detention.**

The parties both assume that Officer Mahoney's brief detention of Ms. Yanni constituted a "seizure" for purposes of the fourth amendment but fell far short of an arrest.  "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 272 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)).  Pursuant to Terry and its progeny, an officer may detain a person for investigation on less than probable cause "if there is articulable suspicion that a person has committed, or is about to commit a crime." Florida v. Royer, 460 U.S. 491, 498 (1983).  The reasonable suspicion standard requires "a minimal level of objective justification." Illinois v. Wardlow, 528 U.S. 119, 123 (2000).

An individual's fourth amendment rights include "the right to walk along a public sidewalk unmolested by law enforcement." Moreno v. Baca, 400 F.3d 1152, 1160 (9th Cir. 2005).  Clearly an officer can "stop" a victim/witness to a crime walking on the street long enough to ask them a question about the event or to seek their assistance in obtaining a statement.  That brief interaction does not implicate any constitutional rights.  "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 5

streets.  Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way."  Terry, 392 U.S. at 34 (White, J., concurring).  If Ms. Yanni had consented to walk with Officer Mahoney, as he claims she did and she agrees was her intent, there would be no fourth amendment violation.  However, Ms. Yanni alleges that he grabbed her arm, "swirled" her around and "started dragging" her down the street.  Ms. Yanni Dep. at 28-29.  Accordingly, viewing the evidence in the light most favorable to plaintiffs, Officer Mahoney arguably violated Ms. Yanni's fourth amendment rights.

### 2. **Qualified Immunity for Officer Mahoney.**

Defendants argue that Officer Mahoney is entitled to qualified immunity.  Courts use a two-part test to determine whether qualified immunity is appropriate, considering: 1) whether the officer violated a constitutional right, and 2) whether the right was clearly established.  See Saucier v. Katz, 533 U.S. 194, 201 (2001); Boyd v. Benton County, 374 F.3d 773, 778 (9th Cir. 2004).  The qualified immunity standard "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violated the law."  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (internal citation omitted).  "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized."  Malley v. Briggs, 475 U.S. 335, 343 (1986).

Defendants do not dispute that the reasonable suspicion requirement and the right to walk down a public sidewalk without interference were clearly established at the time of this incident.  Rather, Officer Mahoney argues that he briefly detained Ms. Yanni because of a mistaken belief and a misunderstanding with Officer Elliott.  If that was all that Ms. Yanni said occurred, there would be no violation of a constitutional right.  Defendants have presented no evidence, however, that Officer Mahoney believed Ms. Yanni was involved in criminal activity; instead, Officer Mahoney did not know why Officer Elliott asked him to bring her back.  Assuming plaintiffs' version of the facts is correct, no reasonable officer could have concluded under the

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 6

circumstances that it was reasonable to grab Ms. Yanni and drag her down the street to Officer Elliott against her will. Therefore, Officer Mahoney is not entitled to qualified immunity on summary judgment.

### 3. Officer Elliott's Liability.

Plaintiffs argue that Officer Elliott is liable for Ms. Yanni's unconstitutional seizure because he caused it to occur. Plaintiffs' Opposition at 11 (quoting Section 1983, which establishes liability for a state actor who "subjects, or causes to be subjected" any person to a deprivation of constitutional rights). Courts have considered whether there was a causal nexus between a defendant's conduct and the constitutional violation:

> Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

Stevenson v. Koskey, 877 F.2d 1435, 1438-39 (9th Cir. 1989) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)). The Court therefore considers whether Officer Elliott, by directing Officer Mahoney to bring Ms. Yanni back, set in motion a series of acts which he should have known[4] would lead Officer Mahoney to detain her in an unconstitutional manner. Officer Elliott did not instruct Officer Mahoney as to how to bring Ms. Yanni back, or tell him to use any means necessary. Moreover, viewing the facts in the light most favorable to plaintiffs, Officer Elliott did not know whether or not Ms. Yanni was a willing witness. Officer Elliott could have reasonably believed that Ms. Yanni would be a willing victim/witness and therefore have no concern that Officer Mahoney would attempt to bring her back forcibly without her consent. "The government surely has a legitimate interest in seeking voluntary cooperation from all." Ganwich v. Knapp, 319 F.3d 1115, 1120 (9th Cir. 2003). It was just as likely that Officer Mahoney would have asked Ms. Yanni to return to the scene, and she would

---

[4] There is no evidence that Officer Elliott actually knew that a constitutional violation would result.

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 7

1  have willingly done so.  See Stevenson, 877 F.2d at 1441 (reversing decision that defendant
2  caused constitutional violation when "[n]othing in this record indicates that [defendant] could
3  have known" that the rights violation was the likely outcome).
4        Plaintiffs also argue that courts have imposed Section 1983 liability on state actors "on
5  whose orders, or at whose request, other officers violate citizens' rights."  Plaintiffs' Opposition
6  at 12.  In this case, unlike the cases cited by plaintiffs, Officer Elliott was not a policymaker who
7  adopted a policy or plan that led to the seizure, he was not present when Officer Mahoney
8  detained Ms. Yanni, he did not participate in the seizure or have an opportunity to prevent it and
9  he was not a supervisor giving an order to a subordinate.  Cf. McRorie v. Shimoda, 795 F.2d
10 780, 783-84 (9th Cir. 1986) (considering whether prison officials were liable for guard's actions
11 by adopting a plan or policy that led to the violation, or by ratifying it); Smith v. Heath, 691
12 F.2d 220, 224-225 (6th Cir. 1982) (officer participated in improper search, was in charge of the
13 investigation, and directed his subordinates to improperly detain one party and search another's
14 apartment without limiting the scope of the search).  The Court therefore finds that Officer
15 Elliott did not cause the violation of Ms. Yanni's fourth amendment rights.

16 **D.**      **Mr. Yanni's False Arrest Claim.**

17       **1.**      **Probable Cause for Arrest.**

18       Probable cause is a complete defense to state law claims of false arrest, false
19 imprisonment, and malicious prosecution.  Hanson v. Snohomish, 121 Wn.2d 552, 563 (1993).
20 "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the
21 facts known to the arresting officer at the time of the arrest."  Devenpeck v. Alford, 125 S. Ct.
22 588, 593 (2004).  "The fact that the officer does not have the state of mind which is
23 hypothecated by the reasons which provide the legal justification for the officer's action does
24 not invalidate the action taken as long as the circumstances, viewed objectively, justify that
25 action."  Scott v. United States, 436 U.S. 128, 138 (1978).  Probable cause requires both a
26 reasonable belief that an offense has been or is about to be committed and that the suspect is the

27
28 ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 8

criminal.  See United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1296 (9th Cir. 1988).

Defendants argue that they had probable cause to arrest Mr. Yanni for investigation of assault on a police officer and for obstruction.  The assault statute, RCW 9A.36.031, states in relevant part:

> (1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree: . . .
>     (g) Assaults a law enforcement officer or other employee of a law enforcement agency who is performing his or her official duties at the time of the assault.

The obstruction statute, SMC 12A.16.010, provides in relevant part:

> A. A person is guilty of obstructing a police officer if, with knowledge that the person is obstructing a public officer, he or she:
>     1. Intentionally and physically interferes with a public officer; or
>     2. Intentionally hinders or delays a public officer by disobeying an order to stop given by such officer; or
>     3. Intentionally refuses to cease an activity or behavior that creates a risk of injury to any person when ordered to do so by a public officer.

Defendants argue that probable cause existed to arrest Mr. Yanni for obstruction because he knew Officer Mahoney was a police officer, he had no right to intervene in the stop of his wife, and he intervened to the point that Officer Mahoney had to order him to stay back.  Officer Elliott argues that he had probable cause to arrest Mr. Yanni for both assault and obstruction because he heard Officer Mahoney's radio call for help, heard yelling in the background, observed Officer Mahoney struggling with Mr. Yanni, and heard Officer Mahoney yelling "step away from us."  Declaration of Scott Elliott ("Elliott Decl.") at ¶ 6.  Although these facts, if undisputed, would provide ample support for probable cause, plaintiffs deny that Mr. Yanni physically intervened or engaged in aggressive behavior.  Instead, they allege, Mr. Yanni merely asked what was going on and said, "But that's my wife" and "take your hands off me" before Officer Mahoney attacked him.  Mr. Yanni Dep. at 63-65.

Defendants argue that probable cause was supported by the two witnesses' statements identifying Mr. Yanni was the aggressor.  Because the witnesses were interviewed *after* Mr. Yanni was arrested, their statements cannot provide probable cause for the arrest.  Viewing these facts in the light most favorable to plaintiffs, the officers did not have probable cause, at the time

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 9

of the arrest, to arrest Mr. Yanni.

### 2. Qualified Immunity for Officer Mahoney.

The Court views the evidence in the light most favorable to plaintiffs and considers whether officers of reasonable competence could disagree regarding whether there was probable cause to arrest Mr. Yanni. Malley, 475 U.S. at 341 ("Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized"). Assuming the facts as alleged by the Yannis, Mr. Yanni did not assault Officer Mahoney or obstruct him. Therefore, the Court therefore finds that Officer Mahoney is not entitled to qualified immunity for Mr. Yanni's false arrest claim.

### 3. Qualified Immunity for Officer Elliott.

Officer Elliott received a call for assistance from Officer Mahoney, heard yelling, then observed him physically struggling with Mr. Yanni. Although Officer Elliott assisted in pinning Mr. Yanni on the ground *before* Officer Mahoney told him that Mr. Yanni assaulted him, the things that Officer Elliott saw and heard were sufficient to convince him that Mr. Yanni was a combative suspect. See, e.g., Ornelas v. United States, 517 U.S. 690, 700 (1996) ("[O]ur cases have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists"). Under these circumstances, the Court finds that a reasonable officer could have concluded that he had probable cause to arrest Mr. Yanni for obstruction and/or assault.[5]

**E.   Mr. Yanni's Excessive Force Claim.**

---

[5] Plaintiffs filed a declaration from their expert Timothy Perry, and defendants have moved to strike the declaration as containing statements which are a "regurgitation" of the facts alleged by plaintiffs, and as containing legal conclusions regarding "reasonableness," "excessive force," and "unlawful seizure." Mr. Perry expressed no opinion regarding Officer Elliott's conduct or about the crime of obstruction. The Court has considered the declaration for purposes of this motion.

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 10

**1.     Reasonableness of Force Used.**

Claims for excessive force are measured under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). When determining if a particular application of force was excessive, the Court considers the circumstances in which the police officer was forced to act, including the severity of the crime at issue, the threat posed by the suspect to the officers or the public, and the suspect's attempts to resist or flee. Id. at 396. The Court considers "whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them." Smith v. City of Hemet, 394 F.3d 689, 700-701 (9th Cir. 2005) (internal citations and quotation omitted); see also Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001). The evaluation of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97 (explaining that reasonableness of force must be judged from the perspective of the officer at the scene "rather than with the 20/20 vision of hindsight") .

Defendants argue that Jackson v. City of Bremerton is analogous. In Jackson, the police attempted to arrest a suspect who was attending a large party in a park. The suspect fled and the crowd aided his flight, refused to obey the officers' orders to disperse, and engaged officers in verbal and physical confrontations. Although police warned the crowd that chemical agents would be deployed, the plaintiff, who was the suspect's mother, interfered with the officers. The police sprayed her with a chemical irritant and pushed her to the ground, then an officer placed his knees on her back and handcuffed her. 268 F.3d at 650. In this case, however, assuming the facts as alleged by plaintiffs, Officer Mahoney pushed Mr. Yanni up against a parked car and punched him in the face approximately five times while Mr. Yanni stood with his hands at his sides. Mr. Yanni had no weapon and did not pose a threat to the public. In light of the facts as alleged by plaintiffs, the Court cannot conclude that the amount of force used was

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 11

reasonable as a matter of law.

Plaintiffs also argue that Officer Elliott used excessive force in tackling Mr. Yanni to the ground and jumping on him. Plaintiffs argue that before Officer Elliott did those things, he observed only pushing and shoving between Mr. Yanni and Officer Mahoney. Officer Elliott, however, also heard Officer Mahoney's radio call for assistance, heard yelling in the background, heard Officer Mahoney yelling at Mr. Yanni to "step away from us," and observed Officer Mahoney struggling with and unable to subdue Mr. Yanni. Elliott Decl. at ¶ 6. Although plaintiffs allege that Officer Elliott does not claim to have experienced any resistance from Mr. Yanni, Officer Elliott states that the officers struggled to gain control of Mr. Yanni, and during the struggle, his pants were torn, his knee was injured and his hand was cut. Id.; see also Teeter Decl., Ex. A (Mr. Yanni stated that he "stopped resisting" when he realized the officers were trying to get him to the ground). Plaintiffs also allege that Officer Elliott failed to consider alternate methods of subduing Mr. Yanni. However, they do not identify any alternate methods or argue that his tactics violated standard law enforcement practices or the police department's own policies. The Court finds that the amount of force used by Officer Elliott was reasonable under the circumstances.

### 2. Qualified Immunity for Officer Mahoney.

In light of plaintiffs' version of the facts, defendants have not shown that it was objectively reasonable for Officer Mahoney to push Mr. Yanni up against a car, grab him by the neck, and punch him approximately five times around his head and face as plaintiffs allege. Ms. Yanni Dep. at 136-39. Therefore, Officer Mahoney is not entitled to qualified immunity on Mr. Yanni's excessive force claim.

**F. The City's Liability.**

Pursuant to Section 1983,[6] a local government entity may not be sued based on a theory

---

[6] Plaintiffs do not argue that any policymaker acted with deliberate indifference. See, e.g., Christie v. Iopa, 176 F.3d 1231, 1240 (9th Cir. 1999) (explaining "deliberate indifference"

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 12

of respondeat superior. Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978).[7] The acts of a subordinate employee, like the officers in this case, are generally insufficient to create municipal liability under Section 1983. See Pembauer v. City of Cincinnati, 475 U.S. 469, 481 (1986). "It is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." See Christie, 176 F.3d at 1239-40 (internal citation omitted). The existence of a policy or custom may be inferred if the municipality ratified the officers' conduct, as plaintiffs allege the City did in this case by concluding the internal investigation with a finding of "exonerated." See, e.g., McRorie, 795 F.2d at 784.

### 1. Knowledge of the Violations.

A ratification requires that a policymaker have "knowledge of the alleged constitutional violation." Christie, 176 F.3d at 1239. It is undisputed that the Chief of Police is a policymaker for purposes of Monell liability. Although the letter notifying plaintiffs of the final outcome of their complaint had Chief Kerlikowske's name on it, he did not sign it, and plaintiffs have presented no evidence that he knew of the investigation or its outcome. Instead, plaintiffs argue that pursuant to SMC 3.28.810(F), the "Chief of Police remains the final Police Department decisionmaker in disciplinary actions," so he must have made the final decision regarding the Yannis' complaint. The Yannis' complaint, however, did not result in discipline to the officers, so it appears from the statute and the record that a civilian employee, rather than Chief

---

basis for liability).

[7] Plaintiffs argue that Monell should be "reconsidered." Plaintiffs' Opposition at 13 n.5. Monell, however, remains good law, and this Court is obliged to follow it.

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 13

Kerlikowske, certified the findings.[8] Because plaintiffs have presented no evidence that any policymaker was aware of the alleged violations and ratified them, dismissal of their claims against the City is appropriate.

### 2. Ratification of the Basis for the Violations.

Even if a City policymaker had knowledge of the alleged violations, plaintiffs must also "'prove that an official with policy-making authority ratified a subordinate's decision or action and the basis for it.'" Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996) (quoting Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992)). The Court considers whether a policymaker ratified the violations and the basis for them.

#### a. The Violation of Ms. Yanni's Rights.

If it were undisputed that Officer Mahoney grabbed and dragged Ms. Yanni as she alleges, then the Court could find that the City ratified that conduct by failing to discipline him or otherwise indicate that his conduct was improper. However, the police department was not required to consider the evidence in the light most favorable to the Yannis, as this Court must on a motion for summary judgment. Instead, the department reviewed all of the evidence, including the officers' and witnesses' statements. In assessing whether a ratification occurred, the Court must consider the evidence that the police department possessed and considered. Otherwise, the Court would, in essence, be determining if the department ratified conduct based on a factual situation different from the one it actually considered.

Based on the evidence before the department, it was entitled to believe that Ms. Yanni was willingly accompanying Officer Mahoney back to the scene until her husband intervened. Although Officer Mahoney took her elbow, he quickly released her as he focused his attention

---

[8] Captain Evenson recommends a disposition to Director Sam Pailca, a civilian employee who reports directly to the Chief of Police; she has the "final say" and certifies the disposition of all IIS cases before they are closed. Evenson Dep. at 21, 28-31; see also SMC 3.28.810(F). Plaintiffs have not presented any evidence regarding Director Pailca's authority or whether she was a police department or City policymaker.

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 14

on Mr. Yanni.  Ford Decl., Ex. 7.  Furthermore, Officer Mahoney knew that Ms. Yanni was in the vicinity of a very recently-committed crime, and Officer Elliott said he needed to speak with her.  Under these circumstances, the department could reasonably have believed that any intrusion on Ms. Yanni was *de minimus* and justified by legitimate law enforcement needs.  See, e.g., Ganwich, 319 F.3d at 1120 ("We balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable") (internal citation and quotation omitted).[9]  Accordingly, the City did not ratify the alleged constitutional violation or the basis for it.

### b. The Violation of Mr. Yanni's Rights.

Plaintiffs have not alleged that Mr. Yanni's arrest and the force used against him were part of a general police department practice or custom.  Instead, they allege that the department was aware, through the IIS process, that Officer Mahoney could not coherently describe how Mr. Yanni assaulted him; Officer Elliott tackled Mr. Yanni to the ground, handcuffed him, and placed him in custody without knowing whether he committed a crime; the Yannis maintained that Mr. Yanni had done nothing wrong; and a criminal jury "agreed."  Plaintiffs' Opposition at 18.  As an initial matter, a jury did not necessarily agree that Mr. Yanni did nothing wrong; rather, they did not find, beyond a reasonable doubt, that he had committed an assault.  Moreover, the jury made its finding after the police department concluded its investigation, based on trial testimony the police did not have during the investigation.

Furthermore, although Officer Mahoney admitted in his statement that he struck Mr. Yanni once or twice with a closed fist, and Officer Elliott admitted tackling him to the ground, these actions were legitimate uses of force if the police department credited the officers' and

---

[9] See also Wardlow, 528 U.S. at 123 (brief detentions require only "a minimal level of objective justification"); Adams v. Williams, 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time").

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 15

witnesses' version of events. The department reviewed all of the evidence, including the officers' statements and the statements from the witnesses, both of whom identified Mr. Yanni as the aggressor.[10] Ford Decl., Ex. 13. Based on the evidence before the department, it did not approve the officers' actions as currently alleged by plaintiffs. See, e.g., Trevino, 99 F.3d at 920 (ratification requires that the "officials involved adopted and expressly approved the acts of others who caused the constitutional violations"). Accordingly, the City is not liable for Mr. Yanni's alleged constitutional violations.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS Officer Elliott's motion for summary judgment (Dkt. #46); plaintiffs' claims against him are dismissed. The Court GRANTS IN PART AND DENIES IN PART Officer Mahoney and the City's motion for summary judgment (Dkt. #49). Ms. Yanni may pursue her unlawful detention claim against Officer Mahoney. Mr. Yanni may pursue his false arrest and excessive force claims against Officer Mahoney. All of plaintiffs' other claims, including all claims against the City of Seattle, are dismissed.[11]

DATED this 2nd day of May, 2005.

*[signature]*
Robert S. Lasnik
United States District Judge

---

[10] The police department reviewed the Yannis' version of events as alleged at that time, which differed in some respects from what they allege now. For example, the Yannis initially told police that Mr. Yanni twice demanded that Officer Mahoney let Ms. Yanni go, and Officer Mahoney punched him twice, rather than as many as five times as Ms. Yanni now alleges. See Teeter Decl., Ex. A.

[11] The Court has under advisement plaintiffs' motion to dismiss the officers' counterclaim for malicious prosecution against Mr. Yanni. (Dkt. #14). The Court will address the remaining issues in that motion by separate order.

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT - 16